UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MARC MARTEL, § | |
| § | Civil Action No. 1:17-cv-00407 |
| Plaintiff, § | |
| § | |
| v. § | Judge McAuliffe |
| § | |
| COMPUTER SCIENCES § | |
| CORPORATION, § | |
| § | |
| Defendant. § | |

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

NOW INTO COURT, through undersigned counsel, comes Defendant Computer Sciences Corporation ("Defendant" or "CSC") and hereby files its Opposition to Plaintiff's Motion to Compel.[1]  As set forth in further detail below, Plaintiff Marc Martel's ("Plaintiff" or "Martel") Motion to Compel (the "Motion") should be denied.

## FACTUAL BACKGROUND

**A. Plaintiff's Allegations.**

1. Plaintiff's employment with CSC ceased in 2014 when he was laid off in a reduction in force.  Prior to the reduction in force, Plaintiff lodged a complaint with CSC's Ethics and Compliance Office (the "ECO"), regarding his annual performance review.

2. After receiving notice of the reduction in force, Plaintiff again contacted ECO, alleging, among other things, that his layoff was unlawful.[2]  ECO investigated Plaintiff's complaints under direction of counsel and prepared a privileged "Report of Investigation," for

---

[1] Rec. Doc. 24.
[2] Rec. Doc. 19, at ¶¶ 24, 31.

{C1883371.1}                                  1

Mr. Adriaen Morse, an attorney employed by CSC as its Director of Global Compliance, Investigations & Litigation.

**B. Plaintiff's Discovery Requests.**

3. Plaintiff propounded several Requests for Production and sought production of documents related to the ECO complaint Plaintiff lodged in 2014.[3]

4. In response to those Requests, CSC objected, among others, on the basis of attorney-client privilege, work product and/or any other privilege that may protect certain documents from disclosure.[4] As required by the Federal Rules of Civil Procedure, CSC specifically stated that it intended to withhold documents based on this objection.[5] Further, CSC stated that it would produce non-privileged documents to Plaintiff after the entry of a protective order.[6]

5. Additionally, CSC produced a privilege log to Plaintiff identifying those documents responsive to Request for Production Nos. 9 and 14 that it was withholding on the basis of privilege.

6. The Court entered the agreed-to Protective Order on October 29, 2018.[7] Shortly thereafter, on November 16, 2018, CSC produced to Plaintiff several documents (approximately 120 pages of documents) relating to Plaintiff's 2014 ECO complaint. CSC, however, continued to withhold production of the Report of Investigation.

7. On January 11, 2019, Plaintiff filed a Motion seeking to compel the production of the Report of Investigation.

---

[3] Rec. Doc. 24-1, at p. 12
[4] Rec. Doc. 24-2, at pp. 49 and 52.
[5] *Id.*
[6] *Id.*
[7] Rec. Doc. 22.

{C1883371.1}  2

## ARGUMENT AND AUTHORITIES

8. Plaintiff's only argument as to why CSC must be compelled to produce the Report of Investigation is based on CSC's Sixth Affirmative Defense that provides that "Defendant did not violate the statutes cited in the Complaint; alternatively, Defendant made good faith efforts to comply with employment-related laws, and any discriminatory act, omission, or decision by any managerial agent would have been contrary to those efforts."[8]

9. Plaintiff argues that an implied waiver of the attorney-client privilege and/or work product protection, as to CSC's investigation of Plaintiff's complaints to the ECO, has occurred based on CSC's assertion of this affirmative defense. However, merely pleading a good faith affirmative defense does not, by itself, result in an implied waiver of the attorney-client privilege and/or work product protection.[9]

10. Plaintiff's argument that merely asserting an affirmative defense results in the implied waiver of the attorney-client privilege and/or work product protection places defendants in an untenable Catch-22 situation: maintain the attorney-client privilege and forego a good faith defense or assert a good faith defense and waive the attorney-client privilege. The Northern District of California discussed the tension that Plaintiff's position creates:

> To accept Plaintiff's argument would mean that any time a defendant disputes a plaintiff's willfulness allegation the plaintiff would be entitled to discovery regarding any legal advice the defendant received on the relevant issue. The defendant would therefore, in effect, be required to admit to willfulness (assuming a[ ] … violation is found) if it wanted to maintain its attorney-client privilege. … Such a concept would discourage parties from

---

[8] Rec. Doc. 20, at p. 13, ¶ 6.
[9] *Davis v. Emery Air Freight Corp.*, 212 F.R.D. 432, 435 n.1 (D. Me. 2003) (noting that "the proposition that employers put any post-harassment investigation conducted at issue simply by invoking the [*Faragher-Ellerth*] defense … would … eviscerate both the attorney-client and work product doctrine"). *Cf. Banco de Brazil, S.A. v. 275 Washington Street Corp.*, No. 09-11343, 2011 WL 3208027, *3 (D. Mass. July 27, 2011) (the "mere fact that the [defendant] believes that it acted in good faith … and that its counsel was involved in the process, does not constitute a waiver of attorney-client privilege").

obtaining legal advice in the first instance, and thus run contrary to the very purpose of the attorney-client privilege.[10]

11. Recognizing these concerns, the relevant inquiry is whether the defendant actually relies on the privileged information to support its defense.

12. In support of his argument, Plaintiff relies on two (2) different court decisions: *Walker v. N.H. Admin. Office of the Courts*[11] and *Cooper v. YMCA of Greater Providence*.[12] Neither decision helps Plaintiff's cause.

13. In *Walker*, the plaintiff alleged claims arising out of workplace harassment, discrimination, and retaliation, *i.e.*, a hostile work environment claim.[13] In response, the defendant asserted an affirmative defense that its investigation into the plaintiff's complaints of harassment were "prompt, thorough, and reasonable," and that it acted reasonably and in compliance with its policy by investigating plaintiff's complaints and that the plaintiff failed to utilize the defendant's policy to avoid harm, *i.e.*, a *Faragher-Ellerth* defense.[14]

14. The plaintiff argued that the defendant waived the attorney-client privilege and work product protection by implication by "asserting that the investigation was prompt, thorough, reasonable and compliant with [its] Policy."[15] The court stated that "courts have found implied waivers as to documents generated in a sexual harassment investigation, where the

---

[10] *Abourdara v. City of Santa Rosa*, No. 17CV01661HSGJSC, 2018 WL 748968, at *1 (N.D. Cal. Jan. 22, 2018) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).
[11] Civil No. 11-cv-421-PB, 2013 WL 672584 (D.N.H. Feb. 22, 2013).
[12] 17-cv-601-JNL-AKJ (D.R.I. Dec. 12, 2018). In the Motion, Plaintiff includes a citation for the *Cooper* case of 2018 DNH 247. CSC was unable to locate a copy of this decision using that citation, however, CSC was able to review the decision by accessing the District of Rhode Island's ECF site. For the ease of the Court's reference, CSC has attached a copy of the *Cooper* decision to its Opposition as Exhibit "A."
[13] *Walker*, 2013 WL 672584 at *1.
[14] *Id.* at *2. At this time, there are no allegations or other evidence that would support that Plaintiff is asserting or that could support an allegation of harassment and/or a hostile work environment.
[15] *Id.* at *6.

employer asserts as an affirmative defense that it exercised reasonable care to prevent and correct promptly any discriminatory or sexually harassing behavior"—*i.e.,* a *Faragher-Ellerth* defense.[16]

15. That being said, and importantly, in *Walker*, "the court decline[d] to find an implied waiver" because *"[d]efendants have not sought to use attorney-client privilege or work product protection as a sword and a shield."*[17]

16. The *Cooper* decision relied on by Plaintiff provides the same. In *Cooper*, defendant asserted a good faith affirmative defense in addition to a *Faragher-Ellerth* defense.[18] The court analyzed whether the defendant's assertion of these affirmative defenses resulted in an implied waiver of privilege. The court stated that "[b]ecause [the defendant] has affirmatively represented that it does not rely on the advice of counsel in asserting or proving its good-faith and *Faragher-Ellerth* defenses, those communications remain privileged."[19]

17. Further, courts outside the First Circuit have held the same. For example, in *Williams v. Sprint/United Management Co.*, the United States District Court for the District of Kansas reached the same conclusion.[20] There, the plaintiff brought a claim that she was discriminated against on the basis of her age when she was selected for a reduction in force.[21] The plaintiff argued that the defendant by asserting its good faith compliance with the ADEA waived the attorney-client privilege.[22] Because the defendant "will not attempt to prove its good faith … by relying on advice of counsel," "[t]he privilege, then has not been waived."[23]

---

[16] *Id.* at *6.
[17] 2013 WL 672584, at *6 (emphasis added).
[18] Exhibit "A," at p. 4.
[19] Exhibit "A," at p. 7.
[20] 464 F. Supp. 2d 1100 (D. Kan. 2006).
[21] *Id.* at 1102.
[22] *Id.*
[23] *Id.* at 1108 (citing *Motely v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995)).

18.     While addressing a *Faragher-Ellerth* defense and not a good faith defense, the court in *Marquez-Martin* held that the defendant's assertion of the *Faragher-Ellerth* defense did not waive privilege.[24]  The court noted that an employer *may* waive privilege by asserting the *Faragher-Ellerth* defense, the court went on to hold that such a waiver does not occur when the employer "does not rely on the content of the communications with [its attorney] or the fact that [the attorney] was consulted to support the reasonableness of its actions."[25]  If the employer does not cite advice of counsel to support its defense, there is no waiver.[26]

19.     Here, CSC can establish the defense cited by Plaintiff with evidence of its Equal Employment Opportunity Policy, Code of Business Conduct, employee acknowledgements, training practices, etc.  CSC has not asserted nor suggested that it is relying on advice of counsel in order to establish a good faith defense.  CSC will prove that Plaintiff was laid off in a reduction in force for legitimate, non-discriminatory business reasons, consistent with its anti-discrimination policies and procedures.  Therefore, this action was taken in good faith.

20.     Indeed, the defendant in *Williams* did just that:  the defendant "asserted that it would demonstrate 'good faith' compliance with the ADEA by reliance on its anti-discrimination policies and the training that its employees received concerning those anti-discrimination policies."[27]  The defendant stated that "it will tout its good faith compliance with the ADEA and the effectiveness of its policies without reference to [the privileged documents] and without

---

[24] 2018 WL 1358214, at *7-8.
[25] *Id.* at *7-8.
[26] *Id.* at *7-8.  *See also*, *Frazier v. Bd. of Cty. Comm'rs of Cty. of Arapahoe*, No. 08-cv-02730-WYD-BNB, 2010 WL 447785 at *3 (D. Colo. Feb. 3, 2010), *objections overruled sub nom. Frazier v. Bd. of Cty. Comm'rs of Cty. of Arapahoe*, 2010 WL 11553297 (D. Colo. June 24, 2010) (in race discrimination case, no waiver of privilege in connection with assertion of reasonable care and good faith when defendant indicated support thereof would be its "prompt reaction" and the "investigations conducted," not on any internal discussions with counsel).
[27] 464 F. Supp. 2d at 1105.

reference to consultation of counsel."[28]  Based on this, there was no implied wavier of privilege.[29]

21. Thus, no implied waiver of the attorney-client privilege and/or work product protection with respect to the Report of Investigation has occurred and the Motion should be denied.

**WHEREFORE**, Defendant Computer Sciences Corporation prays that after due proceedings are had, this Honorable Court deny Plaintiff Marc Martel's Motion to Compel.

Respectfully submitted,

COMPUTER SCIENCES CORPORATION

By its Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  January 25, 2019            By:     /s/  William D. Pandolph, Esq.
                                            William D. Pandolph, Esq. #5579
                                            9 Capitol Street
                                            Concord, NH 03301
                                            Telephone:  (603)223-2800
                                            Facsimile:  (603)224-2557
                                            E-mail:  wpandolph@sulloway.com

                                            F. Daniel Wood
                                            (admitted *pro hac vice*)
                                            The Kullman Firm, P.L.C.
                                            600 University Park Place, Suite 340
                                            Birmingham, AL 35209
                                            Telephone:  (205) 871-5858
                                            Facsimile:  (205) 871-5874
                                            E-mail:  fdw@kullmanlaw.com

---

[28] *Id.* at 1107.
[29] *Id.* at 1108.

{C1883371.1 }                              7

>Bryan Edward Bowdler
>(admitted *pro hac vice*)
>The Kullman Firm, P.L.C.
>1100 Poydras Street, Suite 1600
>New Orleans, LA  70163
>Telephone:  (504) 524-4162
>Facsimile:  (504) 596-4144
>E-mail:  beb@kullmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent and paper copies will be sent to those indicated as non-registered participants on January 25, 2019.

DATED:  January 25, 2019                    By:    /s/ William D. Pandolph, Esq.
                                                                William D. Pandolph, Esq. #5579

{C1883371.1 }                              **8**