UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

Karen Cooper and Linda Dykeman

    v.                                  Civil No. 17-cv-601-JNL-AKJ
                                          Opinion No. 2018 DNH 247

YMCA of Greater Providence and
Steven G. O'Donnell[1]

**ORDER**

On November 7, 2018, the court and the parties held a telephone conference to discuss, among other issues, (1) GPYMCA's privilege claims over a February 10, 2017 email and its two attachments and (2) whether GPYMCA waived privilege over communications with its counsel in January and February 2017 by raising certain affirmative defenses. In an order dated November 8, 2018, the court partially addressed the first issue, ordered further in camera submissions relating to the CEO Recommendations 2.7.16 attachment and Part 5 of the Board Update

---

[1] Defendant The Greater Providence Young Men's Christian Association (GPYMCA) informs the court, with every filing, that it is improperly named in the case caption as "YMCA of Greater Providence." It is unclear to the court why, a year into this litigation, this defendant has not yet moved to amend the case caption to correct this error. To save this defendant the effort of including this informative footnote in every filing, the court sua sponte orders the caption amended to replace "YMCA of Greater Providence" with "The Greater Providence Young Men's Christian Association."

Case 1:17-cv-00407-SM Document 25-1 Filed 01/25/19 Page 2 of 8

2.10.17 attachment, and permitted briefing on the second issue. Having reviewed the parties' submissions and briefing, the court orders as follows.

**Board Update 2.10.17 attachment.** GPYMCA submits that Part 5 of the Board Update 2.10.17 attachment is privileged because it is a verbatim copy of an email sent by GPYMCA's counsel to Jamia McDonald, former Chair of the Board of Directors, for the purposes of providing legal advice. The court agrees. Part 5 of the Board Update 2.10.17 is privileged and need not be produced.

**CEO Recommendations 2.7.16 attachment.** GPYMCA further submits that the CEO Recommendations 2.7.16 attachment is also protected from disclosure. The court disagrees. GPYMCA's submissions make clear that (1) the attachment constitutes CEO Steven O'Donnell's independent evaluation of the situation, (2) O'Donnell sent this evaluation to McDonald, not to counsel, and (3) the Executive Committee discussed its contents in a meeting in which counsel did not participate. It thus does not constitute a communication between attorney and client for the purposes of obtaining legal advice.

Nor is it protected by the work-product doctrine. In this Circuit, the work-product doctrine may protect documents prepared for both litigation and business decisions when, "in light of the nature of the document and the factual situation in

2

the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st Cir. 2002) (internal quotations omitted).  It does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Id. at 70 (internal quotations omitted).

    Here, as Parts 1 and 3 of the Board Update 2.10.17 attachment (which are not privileged) make clear, the Chair of GPYMCA's Board asked its CEO to prepare the CEO Recommendations 2.7.16 attachment to inform the Executive Committee and the Board about "how he would like to proceed on organizational matters . . . ."  The Executive Committee discussed his recommendations in a session without counsel present.  Regardless of whose idea it may have been to obtain them, the CEO's views on how to proceed on organizational matters, prepared for a discussion without counsel present, fall into the category of documents that "would have been created in essentially similar form irrespective of the litigation." Maine, 298 F.3d at 70.  Nothing in GPYMCA's submissions suggests otherwise.  Accordingly, the CEO Recommendations 2.7.16 attachment is not privileged and must be produced.

3

**Affirmative defenses.** The plaintiffs also argue that GPYMCA waived privilege over communications with its counsel in January and February 2017 by raising two affirmative defenses: the good-faith and Faragher-Ellerth defenses.

GPYMCA does not dispute that it has raised those defenses. First, GPYMCA asserted that it "acted at all times in good faith with respect to Plaintiffs, and in full compliance with all applicable laws."[2] It also asserted what is called a Faragher-Ellerth defense, which the First Circuit Court of Appeals has characterized as follows: "Under Title VII, an employer is subject to vicarious liability for sexual harassment by an employee's supervisor which does not constitute a tangible employment action. But the employer may prevail if it demonstrates a two-part affirmative defense: that its own actions to prevent and correct harassment were reasonable and that the employee's actions in seeking to avoid harm were not reasonable." Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 554 F.3d 164, 171 (1st Cir. 2009). Invoking this defense, GPYMCA alleges that, at all relevant times, it "had an effective policy for the prevention and correction of unlawful practices, including requesting accommodations," but that "Plaintiffs unreasonably failed to

---

[2] Amended Answer (doc. no. 38) at 17.

4

utilize it in connection with the allegations of unlawful practices asserted in the Amended Complaint."[3]

The plaintiffs argue that, by raising these defenses, GPYMCA has put at issue its communications with its counsel about its investigation into the plaintiffs' complaints in January and February 2017, and thus waived the attorney-client privilege over those communications.[4]  "[T]he clear majority view is that when a Title VII defendant affirmatively invokes a Faragher-Ellerth defense that is premised, in whole or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation." Angelone v. Xerox Corp., No. 09-CV-6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) (collecting cases).  Here, the plaintiffs filed internal complaints of discrimination and harassment on January 19, 2017.  GPYMCA hired an independent, third-party investigator to investigate the plaintiffs' complaints.  GPYMCA does not claim

---

[3] Amended Answer (doc. no. 38) at 17.

[4] Plaintiffs' Mem. (doc. no. 49) at 1.  Plaintiffs concede, for purposes of this motion, that the privilege would protect those communications but for the assertion of those defenses.  Id. at 5.

5

privilege over the contents of that investigator's report or the interviews and documents underlying it.[5]

The privilege is not, however, waived when the defendant "does not rely on the content of the communications with [its attorney] or the fact that [the attorney] was consulted to support the reasonableness of its actions." Marquez-Marin v. Lynch, No. 3:16-CV-01706-JAW, 2018 WL 1358214, at *8 (D.P.R. Mar. 15, 2018); see also Bacchi v. Massachusetts Mut. Life Ins. Co., 110 F. Supp. 3d 270, 275 (D. Mass. 2015) ("[M]erely pleading a good faith defense does not by itself waive privilege."). Similarly, "there is no waiver if the defendant intends to establish its good faith defense by showing that its conduct was actually lawful, or was actually approved by regulators, and does not intend to rely on counsel's opinion or advice." Bacchi, 110 F. Supp. 3d at 277. Thus, when "an attorney had been consulted about an investigation but did not himself or herself conduct interviews, make disciplinary decisions, or otherwise participate in the investigation itself, the contents of the attorney's advice to the client about the investigative process and the decisions made by the employer remain privileged." McKenna v. Nestle Purina PetCare Co., No. 2:05-CV-0976, 2007 WL 433291, at *4 (S.D. Ohio Feb. 5, 2007).

---

[5] GPYMCA's Mem. (doc. no. 48) at 12.

6

Here, GPYMCA may have consulted one or more attorneys about the investigation and may have sought advice about how to proceed in light of the plaintiffs' complaints and the independent investigation's results. Because GPYMCA has affirmatively represented that it does not rely on the advice of that counsel in asserting or proving its good-faith and Faragher-Ellerth affirmative defenses,[6] those communications remain privileged.

The plaintiffs argue that, even absent reliance on the advice of counsel, O'Donnell's alleged independent investigation and his resulting recommendations and conclusions waive the privilege.[7] As discussed supra, however, O'Donnell's independent recommendations -- and any conclusions he communicated to the Board contemporaneously with those recommendations, or his bases for those communications -- lack the protection of the attorney-client privilege to begin with. The fact that GPYMCA's counsel may have suggested that O'Donnell prepare those recommendations neither clothes them with the privilege nor waives the privilege that protects GPYMCA's communications with its counsel more generally.

---

[6] GPYMCA's Mem. (doc. no. 48) at 12.

[7] See Plaintiffs' Mem. (doc. no. 49) at 5-6.

7

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated:     December 12, 2018

cc:   David S. Cass, Esq.
      Alexsa Marino, Esq.
      Jillian S. Folger-Hartwell, Esq.
      John D, Doran, Jr., Esq.

8