**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 7-29-2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
     MARC MARTEL                  *
                                  *   17-cv-407-SM
              v.                  *   April 4, 2019
                                  *   11:35 a.m.
COMPUTER SCIENCES CORPORATION     *
                                  *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ANDREA K. JOHNSTONE

APPEARANCES:

For the Plaintiff:        Brooke Lois Lovett Shilo, Esq.
                          Heather M. Burns, Esq.
                          Lauren S. Irwin, Esq.
                          Upton & Hatfield, LLP

For the Defendant:        F. Daniel Wood, Esq.
                          The Kullman Firm

                          Natalie Laflamme, Esq.
                          Sulloway & Hollis, PLLC

Court Reporter:           Susan M. Bateman, LCR, RPR, CRR
                          Official Court Reporter
                          United States District Court
                          55 Pleasant Street
                          Concord, NH 03301
                          (603) 225-1453

1                    P R O C E E D I N G S

2              THE CLERK:  This Court is now in session and has

3      before it a motion hearing in 17-cv-407-SM, Martel versus

4      Computer Sciences Corporation.

5              THE COURT:  Okay.  Good morning everyone.

6              What I would like to do is start by asking the

7      parties and counsel to identify themselves for the record,

8      please.

9              MS. LOVETT SHILO:  Your Honor, Brooke Shilo for Mr.

10     Martel, the plaintiff.

11             I'm here with Heather Burns and Lauren Irwin.

12             THE COURT:  Okay.  Good morning.

13             MR. WOOD:  Your Honor, I'm Daniel Wood with the

14     Kullman Firm representing Computer Sciences Corporation.

15             MS. LAFLAMME:  I'm Natalie Laflamme with Sulloway &

16     Hollis and I also represent Computer Sciences Corporation.

17             THE COURT:  Okay.  All right.  So I have read the

18     filings, and I have some things that I would like to have the

19     parties clarify.

20             So I just want to make sure that I am correct in

21     understanding that the dispute here revolves around the

22     investigation report and that's what we're focused on today.

23             MS. LOVETT SHILO:  Your Honor, the investigation

24     report and the documents identified in the defendant's

25     privilege log concerning the investigation.  So there's an

1    investigation report and several associated documents.

2         THE COURT:  Okay.  So there are associated

3    documents in addition.  All right.  So that wasn't clear to

4    me.  It appeared that the dispute was surrounding the report

5    itself only, but there are other documents related to the

6    report?

7         MS. LOVETT SHILO:  There are about 220 pages worth

8    of documents identified in the defendant's privilege log, and

9    those documents are the investigation report, several e-mails

10   forwarding communications about Mr. Martel's ethics

11   complaint, interview notes related to the investigation.

12        THE COURT:  Attorney Wood, was that your

13   understanding of what the scope of the dispute was as well?

14        MR. WOOD:  Well, your Honor, I'm not sure that's

15   specified in the motion at all, but that is an accurate

16   description of what is contained on the privilege log.

17        What was produced in the case already has been

18   documents that were not generated as a result of the

19   investigation but might be considered as factual information.

20        So there was a response to the request before the

21   Court, which are No. 9 and 14.  Those documents with the

22   purely factual information have been produced and only the

23   documents that constitute confidential communications to or

24   from counsel for the purpose of providing legal advice or

25   assistance to the company, those have been withheld but they

1  have been disclosed on the privilege log.

2          THE COURT:  Okay.  So the referenced e-mails and

3  the referenced interview notes that you're talking about,

4  those are things that you've identified as being

5  attorney-client communication or work product?

6          MR. WOOD:  Yes, your Honor.  And it is also

7  important to note that the motion does not challenge the

8  privilege.  Rather, it asserts that there's been a waiver.

9          THE COURT:  That was one of the other questions

10  that I was going to ask.

11          So I want to make sure that I'm also clear that

12  from the plaintiff's perspective you haven't challenged their

13  designation of the materials being privilege, you're simply

14  saying there's been an implied waiver?

15          MS. LOVETT SHILO:  That's correct, your Honor.

16          THE COURT:  All right.  So my question for you is

17  this.  What I understand the defendants are saying is that

18  the report and the 220 pages of materials that they have

19  designated as privileged, either attorney-client or work

20  product, they don't intend to use to establish any of their

21  affirmative defenses.

22          Why doesn't that resolve the dispute?

23          MS. LOVETT SHILO:  Your Honor, we, you know,

24  understand that the defendant has suggested that, but their

25  language in their suggestion has been a little bit less than

1    clear.

2              So in their objection, which is now document

3    No. 25, paragraph 19, they say, "Here, CSC can establish the

4    defense cited by plaintiff with evidence of its Equal

5    Employment Opportunity Policy, Code of Business Conduct,

6    employee acknowledgments, training practices, etc.  CSC has

7    not asserted nor suggested that it is relying on advice of

8    counsel in order to establish a good faith defense."

9              But cases including Cooper, which is a case that

10   was decided by a District of New Hampshire judge although it

11   was a Rhode Island case, and the cases cited by CSC, Fraser

12   and Williams, all of those cases suggest that the privilege

13   is not waived when the defendant has affirmatively

14   represented that they will not use or seek to use the

15   information in -- the requested information in trial or in

16   subsequent --

17             THE COURT:  But don't those cases all deal with a

18   circumstance where there has been an Ellerth-Faragher

19   affirmative defense raised?  And how does this good faith

20   that you've cited -- as I understand it, the affirmative

21   defense that you're focused on is affirmative defense No. 6.

22   How is that an Ellerth-Faragher defense?  Isn't the good

23   faith defense raised in connection with punitive damages

24   risk?

25             MS. LOVETT SHILO:  Your Honor, two points on that.

1    In the Cooper case the Court was deciding based on asserting

2    or proving its good faith and Faragher-Ellerth defenses.  So

3    in that case there was a good faith defense and a

4    Faragher-Ellerth defense.

5              Also, I would like to direct the Court to the

6    defense's response to Mr. Martel's charge of discrimination.

7    I have a copy for you if that would be helpful.

8              But in that response on page 4 they have a section

9    titled EEO Policy and RIF Justification, and in that they

10   state that, "The company maintains an equal opportunity

11   policy which states in part," and then it goes on to state

12   that, you know, discrimination over the age of 40 will not be

13   tolerated.

14             CSC then writes, "Employees may use CSC's open door

15   policy for complaints concerning suspected violations of the

16   EEO policy.  To that end, employees may," and it lists a

17   number of people that reports could be raised with,

18   "including contacting CSC's Ethics and Compliance Office or

19   using CSC OpenLine, which is a confidential resource for

20   seeking ethics advice and reporting misconduct.  The same

21   channels are also available for employees with ethics

22   complaints or suspected violations of CSC's Code of Business

23   Conduct."

24             In the next paragraph it continues, "As discussed

25   below, prior to the termination of his employment Martel made

1  two internal complaints containing many of the same

2  allegations as his discrimination charge, including that he

3  believed he was targeted for the RIF because of his age.  Mr.

4  Martel's complaints were fully investigated by CSC, and the

5  company found no evidence to support his contention that age

6  was a factor in the RIF decision."

7           THE COURT:  Okay.  So is it your position that that

8  disclosure in the Human Rights Commission process is also a

9  basis for the Court to find an implied waiver?

10          MS. LOVETT SHILO:  Your Honor, it suggests that CSC

11 is asserting a good faith defense based upon its

12 investigation of Mr. Martel's complaint.

13          THE COURT:  Okay.  All right.

14          Attorney Wood, what's your response to that?

15          MR. WOOD:  Your Honor, the defendant can and will

16 prove good faith by showing that its conduct was actually

17 lawful.  That the plaintiff was laid off as a result of a

18 business reorganization and a reduction in force that was

19 legitimate, bona fide, and nondiscriminatory.

20          Also, the defendant can establish good faith by

21 showing that it maintains an appropriate equal employment

22 opportunity policy.  That the decision maker in this case was

23 aware of that policy and believed or had no reason to believe

24 that there was any violation of that policy in the decision

25 that it made.

1              We're not relying on confidential or privileged

2    communications or materials that were generated for the

3    purpose of providing legal advice to the company in order to

4    establish that defense.

5              In answer to the Court's question and the assertion

6    just now by the plaintiff, I'm not sure that that report

7    would be admissible for any reason -- excuse me, not report,

8    the response to the charge.

9              The pleadings here that have been joined, defendant

10   has stated simply to clarify its response to the plaintiff's

11   allegation that he was notified of the layoff but then

12   because he had a complaint that was still pending his layoff

13   was postponed.  We have answered that by saying we admit that

14   with clarification that there was no substantiation for the

15   assertion of any improper or unlawful conduct.  That is the

16   extent of the allegation in the pleadings in this case.

17             THE COURT:  What do the applicable policies say

18   about investigation?

19             MR. WOOD:  In terms of what, your Honor?

20             THE COURT:  In terms of whether an investigation

21   would be conducted.

22             MR. WOOD:  I think there is language both in an

23   equal employment opportunity and any type of ethics

24   materials, like a code of business conduct --

25             THE COURT:  Okay.

1          MR. WOOD:  -- that state that there are avenues

2    through which an employee may raise concerns and that those

3    concerns will be appropriately addressed.

4          THE COURT:  Okay.  So what I understand the

5    plaintiffs are concerned about in part is that if your

6    defense in this case is we have policies and we followed --

7    we implemented those policies and followed those policies in

8    good faith and there's something that was either defective or

9    deficient in the way that Mr. Martel conducted himself in

10   accordance with those, doesn't it beg the question that Mr.

11   Martel is going to need to let someone know in the course of

12   this trial, if it goes to trial, that he in fact lodged a

13   complaint or followed these policies?

14         MR. WOOD:  Your Honor, I guess one caveat is that

15   we don't at this point know what the plaintiff's testimony

16   will be, but beyond that caveat I think the important

17   distinction is that the good faith defense may be established

18   by saying this decision maker was aware of the policies and

19   did not think there was any violation.  That would constitute

20   evidence that establishes a good faith belief that the action

21   did not violate any age discrimination laws.

22         What the plaintiff seems to be asserting is that,

23   as in a Faragher context, we might delve into the

24   reasonableness, that is, the content of the investigation

25   itself, and that's not been asserted.

1          THE COURT:  Well, in a Faragher context wouldn't it

2    also be that you could be delving into whether or not the

3    plaintiff had availed himself of your policies appropriately?

4          MR. WOOD:  Yes, your Honor, but there is no

5    contention here that Mr. Martel failed to complain about his

6    layoff.  He did.

7          THE COURT:  Okay.  What's the plaintiff's response?

8          MS. LOVETT SHILO:  Your Honor, just to be clear,

9    Mr. Martel made a first complaint prior to his layoff that

10   was largely about his 2014 performance evaluation in that in

11   our motion to compel discovery, document number 24, there's a

12   statement that prior to Mr. Martel's termination he filed an

13   internal ethics complaint which included a complaint of age

14   discrimination.

15         There were actually sort of two components to that

16   complaint.  So the first one was before he was terminated and

17   it concerned primarily his 2014 performance evaluation.  He

18   was then terminated.  He then made another communication to

19   the ethics line expanding on his complaint, and that is the

20   first time that an explicit complaint of age discrimination

21   was made.  So just to clarify for the Court, that paragraph

22   may be misleading.

23         To respond to the Faragher-Ellerth issue, that's

24   not what we're arguing here.  We're arguing that in the good

25   faith defense that the defendants have raised they seem to be

1    relying on their EEO policy which necessarily implies Mr.

2    Martel's ethics complaint pursuant to that policy.

3            We also have asserted in our reply that we

4    anticipate Mr. Martel will testify that he filed a complaint

5    with CSC's ethics line, that he understood that his complaint

6    was investigated, and that he was never communicated the

7    results of the investigation.

8            THE COURT:  Okay.  So I'm just going to stop you

9    there for a moment.

10           Let's assume that testimony comes in.  What's the

11   defendant's position on where we go from there?

12           MR. WOOD:  I think that the defendant -- if that

13   were the case, the defendant could dispute the allegation

14   that there was no investigation.

15           THE COURT:  No, they said there was an

16   investigation and he was never made privy to the outcome of

17   that investigation.

18           MR. WOOD:  They could dispute the notion that he --

19   or the assertion that he was not made aware of the outcome of

20   the investigation as well.

21           THE COURT:  Meaning, I think you're saying, we

22   upheld the decision to lay him off?

23           MR. WOOD:  There could be testimony that he was in

24   fact notified of the outcome of the investigation.

25           THE COURT:  All right.  You're looking -- you want

1   to respond.  Go ahead.

2          MS. LOVETT SHILO:  Your Honor, we have no

3   information that our client was ever communicated results of

4   an investigation in this matter, and I think that goes back

5   to the point of -- if Mr. Martel testifies, as we anticipate

6   he will, the investigation will come up and it will come up

7   in the context of trial.  And there's strong case law in the

8   First Circuit citing U.S. Supreme Court cases saying that the

9   deposition discovery rules were designed to essentially

10  prevent surprises at trial by permitting discovery --

11         THE COURT:  But I'm not hearing the defendants say

12  they're going to produce the report or that they're going to

13  disclose any of the contents of the report.  It sounds like

14  what they're saying is the dispute might be as to whether or

15  not there was a communication with your client communicating

16  something to him, either that the investigation was over, a

17  conclusion from the report, I have no idea what their

18  position is, but it doesn't sound like what they're saying is

19  we would produce the report or use the report.

20         MS. LOVETT SHILO:  Right.  Your Honor, in order to

21  be fair, if they are going to argue that our client was

22  informed of the outcome and what that outcome was, we're

23  entitled to challenge the outcome and determine whether that

24  outcome was fair.

25         THE COURT:  So you want to get to the adequacy of

1  the investigation?

2          MS. LOVETT SHILO:  That's correct.  If the

3  defendant will be asserting that Mr. Martel's complaint was

4  investigated and that a conclusion was reached and that his

5  termination was upheld.

6          MR. WOOD:  Your Honor, very generally speaking, the

7  argument that's being presented is if a defendant asserts

8  good faith of any type or if the existence of an

9  investigation is mentioned in any context, then the defendant

10 has completely waived the privilege and all contents of that

11 investigation are subject to discovery.  There is no

12 authority that supports that proposition, and that's what's

13 being put before the Court.

14         THE COURT:  Let me ask you this question.  There

15 are two investigations that are wrapped up in one.  The first

16 was an investigation into concerns regarding a performance

17 evaluation.

18         MR. WOOD:  Your Honor, that initial concern went to

19 employee relations, which is like a human resources

20 department.

21         THE COURT:  Okay.  Yeah.

22         MR. WOOD:  The materials produced by those

23 representatives that were not under direction of counsel have

24 been produced in this case.  When it got to the point in our

25 factual chronology at which Mr. Martel asserted allegations

1  that his layoff was illegal or not ethical, at that point in

2  time there was direction from the general counsel of the

3  company under which we claim that these materials from that

4  point, and to the person that received those instructions,

5  that those materials are privilege.

6           So not only does the plaintiff have the material

7  from employee relations prior to that date, but the plaintiff

8  has factual information other than privileged communications

9  that go to the underlying facts that were investigated.

10          So we have met our obligations under the rules, but

11 we are entitled to assert privilege, and we are not using it

12 as a sword and a shield, and therefore there isn't any

13 authority before the Court that would compel the Court to

14 hold that there's been a waiver.

15          THE COURT:  I just want to ask you a question

16 because it relates to the affirmative defense.

17          So the sixth affirmative defense, as I understand

18 it, or at least -- I'm looking at document No. 25, which is

19 the opposition to plaintiff's motion to compel.  I'm looking

20 at paragraph 8 on page 3, and you've quoted that sixth

21 affirmative defense as saying, "Defendant did not violate the

22 statutes cited in the complaint."  And then you say,

23 "Alternatively, defendant made good faith efforts to comply

24 with employment related laws and any discriminatory act,

25 omission, or decision by any managerial agent would have been

1    contrary to those efforts," and then you're referring to

2    document No. 20 at paragraph 6.

3            So are you representing to the Court that in your

4    -- in defendant's argument that it made good faith efforts to

5    comply with employment related laws that you would not be

6    relying on the fact of an investigation or the outcome of the

7    investigation as it's set forth in that investigative report?

8            MR. WOOD:  Your Honor, we have pled in response to

9    the plaintiff's allegation that his RIF was delayed because

10   he had a complaint to the ethics office pending.  We have

11   pled that that's true, but the complaint was investigated and

12   determined to be without merit; that is, that there was not

13   evidence that supported it.

14           So the existence of an investigation and the

15   ultimate conclusion, especially if communicated to the

16   plaintiff or acknowledged by the plaintiff, does not waive

17   the privilege.  That in and of itself is not privileged

18   information and would be supported by the facts and the

19   documents that have already been produced.

20           THE COURT:  And your position is that somehow the

21   fact that an investigation took place and that there was a

22   conclusion reached doesn't open up the opportunity for the

23   plaintiff to discover the report itself?

24           MR. WOOD:  That's correct.

25           THE COURT:  Under Cooper or any of the other cases

1  they've cited.

2          MR. WOOD:  Walter.  Right.  That's correct.

3          THE COURT:  Okay.  What's the plaintiff's position?

4          MS. LOVETT SHILO:  Your Honor, CSC is citing

5  compliance with employment laws and that the investigation

6  was part of their compliance with employment laws.  That

7  compliance is only in good faith if that investigation was

8  conducted in a fair and in a good faith manner.

9          So by relying on the outcome of the investigation

10 to support compliance with employment laws they're

11 necessarily putting the fairness and the good faith nature of

12 the investigation at issue.

13         THE COURT:  So the other question I have, and it

14 wasn't raised by the parties but it comes in as we look at

15 No. 6, I would like to -- I'm struggling a little bit with

16 one of the other affirmative defenses that relates to this

17 issue.  Just give me a moment to find the document.

18         Document No. 20.  Does the defendant have their

19 answer available to that?

20         MR. WOOD:  Your Honor, I have a partial copy with

21 handwritten notes and highlights.

22         THE COURT:  All right.

23         MS. BURNS:  Your Honor, do you need a copy of the

24 answer?

25         THE COURT:  I would actually like the defendant to

1    have a copy of the answer if it's document No. 20 because

2    that's what I'm looking at.

3              MS. BURNS:  We have a copy we can share.

4              THE COURT:  Thank you.  All right.  Bear with me.

5              If you could direct your attention, Attorney Wood,

6    to affirmative defense No. 25.  Based on what you've just --

7    what we've been talking about in terms of what the

8    defendant's position is in this case as it relates to

9    plaintiff's conduct in connection with the policies and

10   procedures of the employer, I'm struggling a little bit with

11   that and with what's in this affirmative defense.

12             MS. LOVETT SHILO:  Your Honor, just to clarify, the

13   numbering on the answer that we just gave Attorney Wood is

14   different from what you're referencing.

15             THE COURT:  I'm looking at document No. 20,

16   affirmative defense No. 25.

17             MR. WOOD:  Page 16.

18             THE COURT:  Page 16.  Thank you.

19             MS. LOVETT SHILO:  Okay.

20             MR. WOOD:  Your Honor, I believe that that wording

21   is based on a Faragher defense.

22             THE COURT:  Well, we've been talking all along that

23   there aren't Faragher defenses so I'm a little confused.

24             MR. WOOD:  Well, the challenge was based on defense

25   No. 6 and the good faith defense.

1          THE COURT:  Right, but as we've been talking

2     about what the defendants intend to do to establish their

3     good faith defense, you said you were going to be relying on

4     your policies and procedures.  And so that brings me to

5     affirmative defense 25 which says, "We maintained and

6     enforced good faith policies and procedures prohibiting

7     unlawful discrimination."

8          MR. WOOD:  That's correct, your Honor.

9          THE COURT:  Okay.

10          MR. WOOD:  I think the last clause in that defense

11     is asserted as an abundance of caution.  I am not aware of

12     any evidence that would suggest the plaintiff failed to

13     complain.

14          THE COURT:  Okay.

15          MR. WOOD:  And that, to clarify the issue, can be

16     withdrawn.

17          THE COURT:  Okay.  And when you refer to in your

18     sixth affirmative defense that any discriminatory act,

19     omission or decision by any managerial agent would have been

20     contrary to those efforts, isn't that an effort to avoid

21     vicarious liability?

22          MR. WOOD:  It would be, your Honor.  I mean, that

23     is the language that's used under that type of standard for

24     Faragher.  But again, the good faith issue follows more of

25     the Kolstad analysis and that is the evidence that the

1    defendant will rely on.  First of all, that this decision

2    maker was aware of the policy, not only that it was properly

3    implemented and disseminated.

4         THE COURT:  That's just a training issue.  That's

5    what always happens in a good faith defense.  You come forth

6    as the defendant and you say we have these policies.  We

7    trained and educated folks on them.  The managers and

8    supervisors and individuals that were involved in the

9    decision-making in this case all had the same training, et

10   cetera.

11        But this affirmative defense No. 6 is a little

12   different.  It's hard for the Court not to read it in

13   connection with No. 25 given that conclusory language, which

14   is that any discriminatory act, omission, or decision by any

15   managerial agent would have been contrary to those efforts.

16        MR. WOOD:  The testimony -- the evidence will be

17   specific to this, not only the general evidence that you see

18   in all employment cases that a proper policy that prohibits

19   discrimination was disseminated and people were educated, but

20   that this particular decision maker was aware of that policy

21   and had no reason to believe that the actions violated it.

22        The defendant does not intend and has said

23   expressly to the Court that it is not going to rely on

24   privileged communications, materials, or information in order

25   to establish that defense.

1          THE COURT:  And your position is that even if the

2     jury were to hear any information about the fact of an

3     investigation or that there was a complaint made consistent

4     with those same policies that you're relying on as saying are

5     the policies that you'll be using to make your good faith

6     defense arguments, that because you're electing not to use

7     that report and those other communications that are not open

8     and available to the plaintiffs under the case law that's

9     controlling?

10          MR. WOOD:  That's correct, your Honor, because it's

11     not the use of that material as a sword and a shield.

12          THE COURT:  Okay.

13          Anything further from the plaintiff?

14          MS. LOVETT SHILO:  Your Honor, I think we've stated

15     this before, but communicating the results of the

16     investigation without the plaintiff having an opportunity to

17     contest the reliability of those results would be

18     prejudicial.  And if the results are introduced at trial, we

19     believe that they're discoverable.

20          THE COURT:  Can the defendants give the Court a

21     proffer as to what it is that it believes the communication

22     to the plaintiff was as to the outcome of the results of the

23     investigation?  If you can't do it today, we can come up with

24     another format for you to do that.  I'm not trying to put you

25     on the spot, but I think it may be important for the Court to

1  understand what the evidence is anticipated or expected to be

2  as it relates to that.

3           MR. WOOD:  I think that would be preferable, your

4  Honor, rather than speaking to it directly today.

5           THE COURT:  Okay, because that seems to be where

6  the rubber meets the road on this based on what you've

7  described you anticipate the evidence to be as it relates to

8  your good faith defense and as to the issue of how the

9  investigation is likely to come up at trial.

10           MR. WOOD:  May I point out --

11           THE COURT:  Yes.

12           MR. WOOD:  The plaintiff's statement in the reply

13  is that there may be evidence to this effect and in response

14  there may be some assertion by defendant, which at this point

15  is speculative.

16           THE COURT:  I appreciate that.  I think today as

17  we've been talking about this there's been some refinement of

18  that argument, but there's also been a refinement of your

19  position as to how you expect and anticipate the good faith

20  issue to evolve.  And your reliance on the policies -- and I

21  think you've conceded that the policy makes a reference --

22  the policies at issue here that you're going to be relying on

23  make issue to there not only being a complaint process but

24  there being an investigative process.  So that's how we sort

25  of got to this place.

1        How much time do you need, Attorney Wood, to

2    provide the Court with information as to what the proffer

3    would be as to what was communicated to Mr. Wood as to the

4    outcome of the investigation?

5            MR. WOOD:  Communicated to Mr. Martel?

6            THE COURT:  Excuse me.  Communicated to Mr. Martel.

7            MR. WOOD:  I would say two weeks, your Honor.

8            THE COURT:  You can't do it any quicker than that?

9            MR. WOOD:  I could try.

10           THE COURT:  Okay.

11           MR. WOOD:  I will certainly follow the Court's

12   direction.

13           THE COURT:  It just seems like a long time, and I

14   want to be able to address that issue with folks.

15           So why don't we do this.  What I would like to do

16   is see if you can get that to the Court and to opposing

17   counsel.  Just the proffer.  No arguments.  And I'll give you

18   time to make arguments -- both make arguments.

19           What my inclination is -- let's see, today is the

20   4th of April.  Why don't you try to get something by the 12th

21   of April, and then what I would like to do is to give the

22   parties an opportunity to provide the Court with whatever

23   additional authority or argument they wish to make as it

24   relates to that proffer and how it fits into the arguments

25   we've been talking about today and the discoverability or

1    lack of discoverability by the 19th of April.  All right?

2         Again, I just want to clarify that although there's

3    been some reference here to Ellerth-Faragher affirmative

4    defenses, the plaintiff's position is that it's the good

5    faith affirmative defense that triggers your entitlement to

6    this report and to these other communications as an implied

7    waiver?

8         MS. LOVETT SHILO:  Your Honor, that's our

9    understanding.

10        THE COURT:  All right.  Okay.  So that was the

11   other thing that I wanted to make sure we were clear on.

12        I will also again just note for the record that as

13   I understand it, Attorney Wood, you've withdrawn affirmative

14   defense No. 25 to the extent that it includes references to

15   the plaintiff failed to reasonably avail himself of such

16   policies and procedures and failed to otherwise avoid the

17   harm?

18        MR. WOOD:  Yes, your Honor.

19        THE COURT:  All right.  Okay.  Anything further?

20        MS. LOVETT SHILO:  Your Honor, my colleague,

21   Heather Burns, has an issue that she would like to raise.

22        MS. BURNS:  Your Honor, we wanted to apprise the

23   Court of the fact that we do anticipate filing additional

24   motions to compel in this case.

25        I'm not sure we've had an opportunity to share with

1   the Court the full nature and extent of the difficulty that

2   we've had in getting discovery in this case, but we do want

3   to advise you of the fact that originally we propounded our

4   first set of interrogatories and requests for production in

5   this case on June 18, 2018.

6           It is now ten months later.  We have virtually no

7   discovery and no meaningfully interrogatory answers from CSC.

8           THE COURT:  Attorney Burns, I don't want to -- in

9   fairness to Attorney Wood who is here but may or may not have

10  been prepared to deal with these issues today, here's what

11  I'm going to suggest that we do.  We've already had one

12  informal conference over the phone.  We now have this motion

13  to compel which I didn't address during that informal

14  conference.

15          It strikes me that what needs to happen is -- you

16  have Attorney Wood physically here today.  I would encourage

17  all of you to take some time, go to one of the conference

18  rooms that's right out here, and walk through where you are

19  with discovery.

20          If you all want to schedule either a telephonic or

21  an in-person discovery status conference, whether it's

22  informal or not informal, I'm happy to do that for you.

23          Remind me, if you could, what the deadline for the

24  close of discovery is, or are we in a place where we're in

25  limbo with dates right now?

1          MS. BURNS:  We went into limbo, your Honor.

2          THE COURT:  Okay.

3          MS. BURNS:  And I believe the last order from the

4    Court that we have asks that by May 10th we set a new

5    schedule for the balance of discovery, including a new trial

6    date.

7          We feel absolutely unable to do that because until

8    we get discovery from the defendants we can't start taking

9    depositions and we can't move toward trial.

10          THE COURT:  I hear you.  All right.

11          MS. BURNS:  Your Honor, if I could just say one

12   other point, because I do think Attorney Wood was fully

13   prepared to talk about this today.  We had prepared a second

14   motion to compel in this case.  We sent it to Attorney Wood

15   on March 27th.  That was early last week.  We indicated that

16   we were looking for assent or for filing of the motion.  He

17   asked us to delay filing the motion.  He asked us to delay I

18   believe until last Friday.  Then he indicated he still needed

19   additional time.  We asked him to get us information no later

20   than Wednesday, being yesterday, about his position on

21   things.

22          As has happened in every single instance in this

23   case, we got a letter last night, at 10 o'clock last night,

24   raising the issues, and essentially the supplement that we

25   have gotten is still not responsive to the issues that were

1  raised in the motion to compel.

2          The letter that we got from Attorney Wood's

3  associate, Attorney Bowdler, asks again for another meet and

4  confer with them regarding this discovery.

5          THE COURT:  He's here today so I'm going to

6  encourage you to have that conversation.  At some point in

7  time -- you know, the Court's not prepared to address these

8  issues today.  I've got the motion to compel in front of me.

9  That's what I was ready to do.

10          MS. BURNS:  Okay.

11          THE COURT:  That's what I have information on and

12  that's what I would like to focus on today, but I am

13  available to both sides to address these issues.

14          If we have to have regular discovery conferences to

15  get you through discovery, I'm not happy about doing that, I

16  don't think that that's a good use of the parties' time, but

17  I know how to conduct discovery.  I haven't been away from

18  litigating cases that long.  So I caution both sides that if

19  the Court's time on this case outweighs the way that the

20  Court normally handles discovery issues, it's not going to be

21  good for either party.

22          So I'm going to encourage you while you're all

23  physically here today to spend some time trying to work

24  through these issues.  If you can't work through them, I will

25  gladly at the request of the parties set up a comprehensive

1    discovery status conference where both sides will have an

2    opportunity to let the Court know where we are with

3    discovery.

4            Attorney Wood, my sense would be, if we're going to

5    do that, that I would expect counsel to physically come to

6    the courthouse and for us to spend a good portion of a day

7    going through discovery, and I typically rule comprehensively

8    on all of the issues if we can't reach an agreement.

9            So we can set aside the things that we're going to

10   file motions to compel on, and we can try to work through the

11   things that we agree to.

12           I would encourage you to have your conversations.

13   If you reach some kind of tentative agreements that you want

14   to review with me, if I'm available, if we can get a court

15   reporter here, I will gladly sit down with you and we can try

16   to do that today.  I do have a somewhat full schedule this

17   afternoon, but I wouldn't mind taking advantage of Attorney

18   Wood physically being here, but right now I'm just not in a

19   position to respond to the discovery disputes.  All right?

20           MS. BURNS:  I understand, your Honor.

21           THE COURT:  Thank you.  I appreciate it.

22           All right.  Please speak to each other and see if

23   you can work it out.  Thank you.

24           MR. WOOD:  Thank you, your Honor.

25           (Conclusion of hearing at 12:15 p.m.)

1                           C E R T I F I C A T E

2

3

4           I, Susan M. Bateman, do hereby certify that the

5    foregoing transcript is a true and accurate

6    transcription of the within proceedings, to the best of

7    my knowledge, skill, ability and belief.

8

9

10   Submitted: 4-29-19          **SUSAN M. BATEMAN, LCR, RPR, CRR**
                                 LICENSED COURT REPORTER, NO. 34
11                               STATE OF NEW HAMPSHIRE

12

13

14

15

16

17

18

19

20

21

22

23

24

25